## WILLIAM S. GOULD'S CASE.

Suffolk.    March 14, 1913. — September 12, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, &
DE COURCY, JJ.

*Workmen's Compensation Act*, Procedure, Not extraterritorial. *Practice, Civil*,
Appeal, Exceptions. *Words*, "Suit," "Judgment," "Action."

Under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, which
provides that any party in interest in a proceeding before the Industrial Accident
Board, created by the workmen's compensation act, "may present certified
copies of an order or decision of the board . . . and all papers in connection
therewith, to the Superior Court . . . whereupon said court shall render a
decree in accordance therewith . . . [which] . . . shall have the same effect
. . . as though rendered in a suit duly heard and determined by said court,
except that there shall be no appeal therefrom upon questions of fact," it is
not improper that with such certified copies a petition should be filed setting
forth the nature of the questions to be decided.
A proceeding under the workmen's compensation act brought before the Superior
Court under the provisions of St. 1911, c. 751, Part III, § 11, as amended by St.
1912, c. 571, § 14, is to be treated, in the main, as equitable rather than legal
in its nature.

The remedy of a party aggrieved by a decree of the Superior Court in a proceeding brought before it under the provisions of the workmen's compensation act contained in St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, is by an appeal to this court and not by a bill of exceptions.

The workmen's compensation act, contained in St. 1911, c. 751, St. 1912, cc. 571, 666, provides no compensation for injuries received outside this Commonwealth.

RUGG, C. J. This is a proceeding under the workmen's compensation act, St. 1911, c. 751, and St. 1912, cc. 571 and 666.

1. At the threshold lies a question of practice. The insurer, being a party in interest, presented its petition to the Superior Court, together with certified copies of the decision of the Industrial Accident Board. The petition alleges the interest of the employee, employer and insurer, the date of the decision and the insurer's desire to have determined questions of law set out in the decision. St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, provides that "any party in interest may present certified copies of an order or decision of the board . . . and all papers in connection therewith, to the Superior Court . . . whereupon said court shall render a decree in accordance therewith and notify the parties. Such decree shall have the same effect and all proceedings in relation thereto shall thereafter be the same as though rendered in a suit duly heard and determined by said court, except that there shall be no appeal therefrom upon questions of fact." While this section does not require anything more than the bare presentation of the copies of the designated proceedings of the Industrial Accident Board, it is not improper that a petition be filed setting forth briefly the nature of the questions to be decided.

When the case came on to be heard in the Superior Court a decree was entered in accordance with the decision of the board. The judge*. also allowed a bill of exceptions, stating that it was for the purpose of enabling this court to determine the proper manner of bringing before it proceedings of this sort.

The workmen's compensation act has a procedure all of its own. Where the act is adopted by the parties, a relation arises between the employee and the employer, under which in the event of a personal injury to the employee there shall be speedy ascertainment

* *Pierce, J.*

of the new kind of compensation created by the act, coupled with a voluntary relinquishment by both parties of the right to trial by jury as to matters covered by the act. One main purpose of the act is to establish between employee and employer, in place of the common law or statutory remedy for personal injury, which is based upon tort, a system whereby compensation for all personal injuries or death of the employee received in the course of and arising out of his employment, whether through unavoidable accident or negligence or otherwise, (except through his serious and wilful misconduct,) shall be determined forthwith by a public board, and paid by the insurer. For the accomplishment of these ends a simple method is furnished operating without delay or unnecessary formality. The practice should be direct and flexible in order to adapt the remedy to the needs of the particular case. In one aspect a case under the act resembles an action at law, for it seeks ultimately the payment of money. Payments, however, in most instances are by instalments. In another aspect it is akin to the enforcement of the specific performance of a contract, designed to cover the whole range of misfortunes likely to arise in the course of employment in a State with many and diversified industries. Moreover, the compensation is to be paid not directly by the employer, but by the insurer, who is either the "Massachusetts Employees Insurance Association" created by Part IV of the act or any liability insurance company authorized to do business within the Commonwealth. The employee has no immediate relation with the insurer. He is the beneficiary under a contract between the employer and the insurer. A beneficiary under any instrument to which he is not a direct party more naturally looks to equity rather than to law for relief. Part III, § 11, as amended by St. 1912, c. 571, § 14, requires a "decree" to be entered, and refers to the proceeding as a "suit." A decree in our practice commonly refers to that which is entered in equity. "Judgment" is the word expressive of the end of an action at law. "Suit," while a word of comprehensive signification, is applied usually in our practice to proceedings in equity, while "action" is the word descriptive of proceedings at law. Our statutes in general, although perhaps not with absolute uniformity, refer to proceedings in equity as suits, see R. L. c. 159, and to those at law as actions, see R. L. c. 167. Giving due weight to the phraseology of equity procedure

employed in this section, to the beneficent purposes of the act, which can be enforced better through the relief afforded by equity, and to the character of the proceeding itself and the parties thereto, it follows that, in the main, causes under the act in court should be treated as equitable rather than legal in nature, procedure and final disposition.

The act provides only for an appeal, and makes no reference to exceptions. Although exceptions to rulings and refusals to rule are permitted in our system of equity, that is a statutory engraftment, not according to general chancery procedure, and an appeal is simpler and on all grounds better practice. But where exceptions are taken, there can be no final decree until the exceptions are disposed of. The present act, however, requires a decree, which in the ordinary case must be final in its nature, to be entered by the Superior Court. This precludes the possibility of exceptions. It follows that the suit must be brought here by appeal from the decree of the Superior Court, and not by exceptions. As exceptions could not be allowed legally, the case is here rightly on appeal.

2. The facts are that the employee, a citizen and resident of this Commonwealth, made a contract here with the employer, a Massachusetts corporation, for rendering to it his personal services, and accepted the benefits of the act. In the course of his employment he received the injury out of which this claim arises, in the State of New York. He was principally employed in Massachusetts, but at times incidentally worked in New York and other States. The Industrial Accident Board found that the insurer had been paid by the employer for insuring all injuries received by its employees in the course of their employment, whether within or without the Commonwealth. This factor is not of much significance because the obligation of the policy does not refer to anything occurring outside the State, and provides only for performance of the requirements and payment of the compensation designated in the act. If the act prescribes the payment of compensation for injuries received outside the State the insurer has contracted therefor, otherwise it has not.

The question is whether the act governs the rights of parties touching injuries received outside the State. It may be assumed for the purposes of this judgment that it is within the power of the

Legislature to give to the act that effect as claimed for it by the employee. *Mulhall* v. *Fallon*, 176 Mass. 266.

The point to be decided is whether the language used in the act indicates a purpose to make its terms applicable to injuries received outside the State. This must be determined by a critical examination of the words of the statute in the light of ˌits humane purpose. There is nothing which expressly states that the act governs the rights of the parties touching such injuries. This is significant. In the absence of unequivocal language to the .contrary, it is not to be presumed that statutes respecting this matter are designed to control conduct or fix the rights of parties beyond the territorial limits of the State. *Boston & Maine Railroad* v. *Trafton*, 151 Mass. 229. *Howarth* v. *Lombard*, 175 Mass.570, 572. *Young* v.*Boston & Maine Railroad*, 168Mass.219. *Stone* v. *Old Colony Street Railway*, 212 Mass. 459, 464. *Merrill* v. *Boston & Lowell Railroad*, 63 N. H. 259, 260. *Ewen* v. *Thompson-Starrett Co.* 208 N. Y. 245. Part I of the act, which is entitled "Modification of Remedies," and which abolishes certain common law rights of action and defenses for "subscribers" and their employees who do not claim such rights in writing, can relate only to injuries received within the Commonwealth. The correlative provisions which follow and which are substitutional in their nature for the common law remedies and defenses, naturally would be expected to cover the same field in the absence of clear words indicating a larger scope.

A consideration of the act in detail fails to disclose any plain intent to that end. On the contrary, several provisions indicate solely intrastate operation. Part II, § 19, provides that the employee who has received an injury shall submit himself on request to an examination "by a physician or surgeon authorized to practise medicine under the laws of the Commonwealth." It hardly can be inferred from this language that the Legislature intended that physicians or surgeons from Massachusetts should journey to the place of injury, or that those authorized to practise under the laws of other States should make the examination. Part III of the act, which relates to procedure, and which as has been pointed out creates a wholly new method of procedure, deals only with boards and courts within this Commonwealth. No provision is made for enforcing rights as to injuries occurring outside the State.

Part III, § 7, as amended by St. 1912, c. 571, § 12, requires that the hearings of the committee on arbitration "be held in the city or town where the injury occurred." Obviously, this cannot relate to injuries received outside this Commonwealth. Section 11 as amended by St. 1912, c. 571, § 14, provides that in the event of resort to the courts copies of the papers shall be presented "to the Superior Court for the county in which the injury occurred or for the county of Suffolk." The words "for the county of Suffolk" may be presumed to be inserted for convenience, as the offices of the Industrial Accident Board are in Suffolk and courts are continually in session in that county, and not in order to make provision for injuries occurring outside the State. Part III, § 18, requires the employer, within forty-eight hours, not counting Sundays and legal holidays, after the accident resulting in personal injury, to make a report "in writing to the Industrial Accident Board." Part IV, § 18, authorizes the directors of the Massachusetts Employees' Insurance Association, created by the act, to make and enforce reasonable rules and regulations for the prevention of injuries on the premises of the subscribers, "and for this purpose the inspectors of the association shall have free access to all such premises during regular working hours." This section is in furtherance of that part of the purpose of the act as set forth in its title for the prevention of industrial injuries. But it cannot be operative outside of Massachusetts.

Moreover, our act discloses no purpose to exempt from its operation non-resident employees of alien employers who while working within this Commonwealth may receive personal injuries arising out of and in the course of employment. If our act is to be interpreted as having extraterritorial force, similar effect must be accorded to like laws of other States. There would be difficulty in reading such an exception into the phrase of our statute. By Part II, § 20 of the act agreements by employees to waive the provisions of the act are made invalid. This section does not easily permit the inference that contracts under the statutes of other States to abide exclusively by the terms of such statutes were thought of and intended to be excepted by the Legislature. The definitions of our act evidently were not framed with the end of covering the matter now under discussion. "Employee" is defined as including "every person in the service of another under any

contract of hire," with certain exceptions.  Part V, § 2, cl. 3.
See St. 1913, c. 448.  The natural significance of this is that it
includes a service being performed in this Commonwealth.  Sec-
tion 21, to the effect that no payment under the act shall be liable
in any way for debts of the employee, does not readily lend itself to
the idea that the Legislature intended the act to have extraterri-
torial force.  Great difficulties might arise in establishing such an
exemption elsewhere.

These provisions collectively disclose a purpose to confine the
operation of the act to the territory of this Commonwealth.
They fall far short of manifesting a plain legislative intent to
control the relations of parties as to injuries received outside of
Massachusetts.

This conclusion is confirmed by other considerations which point
to the improbability that the Legislature would have expressed
such an intention (if it existed) in any but the plainest words.

It is apparent, from a comparison of the two acts, that our own
follows in important particulars the provisions of the English act.
That act (although it has been held generally to be inoperative
outside the United Kingdom) in express terms applies to masters,
seamen apprentices in the sea service under certain conditions, and
definitely points out the manner of proving and enforcing claims
for injuries occurring therein with reference plainly to those out-
side the United Kingdom.  See St. 6 Edw. VII. c. 58, § 7.  If
it had been the intention of the Legislature to include such inju-
ries within the purview of the act, definite language in the English
act to this end hardly would have been overlooked.  Workmen's
compensation acts had been enacted in many foreign countries
before 1911, and the texts of these had been printed in a report
of the United States Commissioner of Labor and (as shown by
the report of the Massachusetts Commission of Compensation for
Industrial Accidents) were known to the framers of our act.  Sev-
eral of these foreign acts made definite and careful provision
respecting accidents outside their territory.*  It is a violent

---

* 24 Annual Report of U. S. Com. of Labor, vol. 2 [1909]; France: Acts
of 1898, 1902, 1905, 1906, p. 2501; Austria: Law of 1894, art. 2, pp. 2456,
2457; Belgium: Act of 1903, art. 26, p. 2464; Germany: Law of 1900 (a),
art. 4, p. 2517; (see also German Ins. Code of 1911, art. 157, translated in
Boyd on Workmen's Compensation, p. 1252;) Hungary: Act No. XIX of

assumption, under these circumstances, that the Legislature intended its similar law to apply to injuries received in foreign jurisdictions without express words to that effect.

The subject of personal injuries received by a workman in the course of his employment is within the control of the sovereign power where the injury occurs. "It must certainly be the right of each State to determine by its laws under what circumstances an injury to the person will afford a cause of action." *Davis* v. *New York & New England Railroad*, 143 Mass. 301. See *Cormo* v. *Boston Bridge Works*, 205 Mass. 366. Most of the compensa-. tion acts of the States of the Union contain no provision respecting injuries received in a foreign jurisdiction, although several exempt persons engaged in interstate commerce where federal laws shall be construed to furnish exclusive remedies (Laws of Illinois, 1911, pp. 314–326, St. of Kansas, 1911, c. 218, § 7, Pub. Acts of Michigan, 1912, No. 10, Part VI, § 4, Laws of Washington, 1911, c. 74, § 18), while some expressly limit the operation to employment within the State. St. of Nevada, 1911, c. 183, § 3. Laws of Washington, 1911, c. 74, § 2. Laws of Wisconsin, 1911, c. 50, § 1.

Workmen's compensation acts have been discussed generally throughout this country. It is said in the report of the Commission on Compensation for Industrial Accidents, (pages 77, 93,) made in accordance with Resolves of 1911, cc. 66, 110, that in thirteen States besides Massachusetts laws of this general character have been enacted, while in eleven others commissions have been appointed to investigate the subject and to draft laws. These various acts, although having certain features in common, nevertheless differ widely in many essential aspects. Some are compulsory. Some prohibit contracts for a different form of compensation, and make criminal under severe penalties failure to comply with their terms. Some provide for strict State insurance, while others do not. The amount of compensation afforded and the circumstances under which it is to be awarded differ. The diversity of public policy already manifested among the several States is considerable. To say that such acts are intended to operate on

---

1907, art. 4, 5 & 6, p. 2569; Italy: Law of 1904, art. 21 & 25, p. 2617; Luxemburg: Law of 1902, art. 3, pp. 2621, 2622; Netherlands: Law of 1901, art. 9, p. 2641; New Zealand: Act of 1908 (a), § 11, p. 2664; Queensland: Act of 1905 (a), § 2, p. 2687; Transvaal: Act of 1907, § 1, p. 2720.

injuries received outside the several States enacting them would give rise to many difficult questions of conflict of laws. See *Slater* v. *Mexican National Railroad,* 194 U. S. 120. It would require a large dependence upon the comity of other States in enforcing our act and in refraining from enforcing their own as to a subject which commonly is wholly under the control of the several States, and with which, it has been pointed out, a substantial number have already manifested a purpose to deal by a new and special legislation. No court of any sister State, so far as we are aware, has had occasion to pass upon the precise questions here presented.

If employees and employers from different States carry their domiciliary personal injury law with them into other jurisdictions, confusion would ensue in the administration of the law, and at least the appearance of inequality among those working under similar conditions. If such a result had been intended by the General Court, it cannot be doubted that it would have been disclosed in unambiguous words. The trend of the development of the law, historically considered, has been away from a personal law, and toward a territorial law, before which all are equal. See General Survey of Continental Legal History, pp. 80–83. A reversion to such an ancient theory is not lightly to be inferred. It is of the essence of law, where the common law prevails, that it should be common to all similarly situated.

All these considerations combined forbid the inference that the Legislature, having failed to use plain and unmistakable words to that end, intended our act to govern the rights of the parties as to an injury received in another jurisdiction.

It has been held that the English workmen's compensation act has no extraterritorial effect, save as to certain classes in shipping service; *Tomalin* v. *S. Pearson & Son,* [1909] 2 K. B. 61; *Schwartz* v. *India Rubber, Gutta Percha & Telegraph Works Co.* [1912] 2 K. B. 299; *Hicks* v. *Maxton,* 124 L. T. Rep. 135; while the contrary has been held respecting the German act. *Schweitzer* v. *Hamburg American Co.* 138 N. Y. Supp. 944. The character of these acts and decisions affords no light upon the present inquiry.

This proceeding has not been brought to this court without reasonable ground, and no cost is assessed under Part III, § 14.

A decree should be entered to the effect that the employee has no claim against the insurer.

The exceptions must be dismissed.

*So ordered.*

The case was argued at the bar in March, 1913, before *Rugg,* C. J., *Hammond, Loring, Sheldon,* & *De Courcy,* JJ., and afterwards was submitted on briefs to all the justices.

*E. C. Stone,* (*G. F. Grimes* with him,) for the insurer.

*G. P. Drury,* for the employee.