# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF VERMONT.

JOHN H. FINNERAN *v.* CITY OF BURLINGTON.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed February 27, 1915.

*Municipal Corporations—Police Officers—Removal—Action for Salary—Necessity of First Establishing Title to Office—De Jure Officer—Quality of Office—Necessity of Due Process of Law in Removal.*

No. 261, Acts 1906, is the amended charter of the city of Burlington, and §181 provides that application for positions on the police force shall be filed with the police commissioners who shall certify to the mayor the names of those qualified. Section 182 authorizes the mayor, as the needs of the city require, to appoint a sufficient number from those whose names are so certified, and that, if at any time there shall not be a sufficient number of names certified, he "may appoint any person." Section 183 requires that regular policemen shall be retained so long as they are competent and efficient. Section 184 specifies causes and manner of removal. Section 179 requires the board, with the approval of the mayor, to fix the qualifications of members of the police force, and a rule of the commissioners made under this section provided that the applicant

should not be less than 25 nor more than 50 years of age. *Held*, that where the commissioners failed to certify the names of a sufficient number of applicants, and the mayor, under the last clause of §182, appointed plaintiff, he was not subject to the rule made by the commissioners under §179, and so could not be removed merely because he was 53 years of age when appointed.

A *de jure* municipal officer, whose services and prescribed salary are refused on the ground that he is not entitled to hold the office, need establish his title thereto before he can maintain a suit for such salary only where there is another in actual possession of the office.

A public office with prescribed emoluments is a thing of value, of which the *de jure* officer cannot be deprived without due process of law.

SPECIAL ASSUMPSIT. Plea, the general issue. Trial by court at the September Term, 1911, Chittenden County, *Stanton*, J., presiding. Judgment, *pro forma*, for the plaintiff. The defendant excepted. The opinion states the case.

*Alfred L. Sherman,* City Attorney, for the defendant.

Having been removed from the office of policeman, even though such removal were wrongful, an action to enforce payment of salary cannot be brought until the right to the office is established by a proper proceeding for reinstatement. *Throop on Public Officers,* §510; 29 Cyc. 1429; *Van Sant* v. *Atlantic City,* 53 Atl. 701; *Queen* v. *City of Atlanta,* 59 Ga. 318; *Gibbs* v. *Manchester,* 73 N. H. 265; *Selby* v. *City of Portland,* 14 Or. 243, 12 Pac. 377, 58 Am. Rep. 307; *Shannon* v. *City of Portsmouth,* 54 N. H. 183; *City of Hoboken* v. *Gear,* 27 N. J. L. 265; *Hagan* v. *City of Hoboken,* 27 N. E. 265; *Hadley* v. *Albany,* 35 N. Y. 606; *Chicago* v. *Campbell,* 118 Ill. App. 129.

*H. S. Peck* and *R. E. Brown* for the plaintiff.

POWERS, J. At the time this controversy arose the charter of the defendant city was contained in No. 261, Acts of 1906. Section 181 of that act provides for a regular police force. It also provides that applications for positions on that force shall be filed with the board of police commissioners; and that, after

examination, the names of such applicants as are deemed by the board qualified for and eligible to the position shall be certified to the mayor between specified dates.   Section 182 provides that the mayor shall, from time to time as the needs of the city require, appoint from the applicants so certified a sufficient number of police officers; that such appointments shall be so made that not more than two-thirds of the policemen shall, at any time, be of the same political party,—if there are a sufficient number from other parties certified as above stated; and that if at any time there shall not be a sufficient number of names certified for the required number of appointments, the mayor "may appoint any person, subject to the foregoing provision relative to the division of the force between political parties."   Section 183 provides that the regular policemen shall. be retained in office so long as they are competent and efficient, but that they may be removed for cause "as hereinafter provided."   Section 184 specifies the causes and methods of such removals.   It provides for an investigation and hearing by the board of police commissioners; that the board shall make a written report of the facts to the mayor; and that the mayor shall remove or suspend any policeman found guilty.   Section 179 requires the board, with the approval of the mayor, to make rules for the government of the police force, and to fix the qualifications of the members thereof.

At the time here in question, a rule, so made and promulgated, was in force, which provided that in order to be eligible to appointment as a regular policeman the "applicant" should be not less than twenty-five nor more than fifty years of age.

On March 20, 1907, James E. Burke, then mayor of the city, adjudging that the needs of the city required another regular policeman, appointed this plaintiff to that office.   At this time, there were no names certified to the mayor under §181, and his action was taken under the last paragraph of §182, and in conformity with the requirement as to the division between political parties.   The plaintiff qualified and was assigned to duty on the day of his appointment.

Mayor Burke's term of office expired on the first Monday of April, 1907, when he was succeeded by Walter J. Bigelow. On April 25, Mayor Bigelow suspended the plaintiff pending investigation of certain charges preferred by him as mayor. Among these was one that the plaintiff was physically disquali-.

fied. The commissioners met April 26, 1907, and a hearing was had on the mayor's charges. At the close of this hearing, the board, through its secretary, communicated with the mayor in writing, stating that "in answer to the charges of physical disqualification" the plaintiff stated that he was fifty-three years of age when appointed a regular policeman by Mayor Burke, and that the board voted that the charges "so far as they related to physical disqualification, be sustained." Thereupon the mayor notified the plaintiff in writing that, the board of police commissioners having found that he was, when appointed a regular policeman, physically disqualified from receiving the appointment on account of his age, he was removed from that office.

Thereafter, for a period of several months, the plaintiff daily presented himself at headquarters and asked to be assigned to duty. He was not allowed to serve as policeman, but was paid his salary up to the time of his dismissal.

Trial below was by the court, and a *pro forma* judgment was rendered for the plaintiff for the amount of his specification.

The plaintiff was legally appointed, and became a *de jure* officer. The action of Mayor Burke was in strict accord with the provisions of the charter. It was for him to say whether the city required another regular policeman or not; and the commissioners having failed to provide names of applicants properly certified, he was authorized to appoint the plaintiff, provided he did not thereby violate the requirement as to the division between political parties. If we were to assume that the commissioners had the power to do so, it does not appear that they ever promulgated a rule specifying the qualifications of the policeman who should be appointed under the last paragraph of §182. Indeed, it is not claimed that the rule mentioned applied to such appointees, and the use of the word "applicants" shows that it does not. It evidently applies only to those who are specified in §181.

It follows from this, that the attempted removal of the plaintiff was illegal and void. The only fair interpretation of the record is that the commissioners found the plaintiff guilty of physical disqualification because he was too old when appointed. Mayor Bigelow correctly understood their report to him, and his action was based upon no misapprehension of the result of the board's action. But since the rule did not apply

to the plaintiff, his age was not a disqualification, and he could not be removed because of it.

But the defendant says that if all this be true, this action cannot be sustained until the plaintiff has proceeded by mandamus for reinstatement or some other appropriate action to establish his title to the office.

It is true as shown by the defendant's brief, that some courts hold that inasmuch as a policeman is a public officer, he must first establish his right to the office, before he can sue to recover the salary attached thereto. See *Hoboken* v. *Gear,* 27 N. J. L. 265; *Gibbs* v. *Manchester,* 73 N. H. 265, 61 Atl. 128. But others hold,—and with better reason, we think,—that it is necessary to first proceed to establish title to the office only when there is another in actual possession of it.  *Gorley* v. *Louisville,* 108 Ky. 789, 55 S. W. 886; *Leonard* v. *Terre Haute,* (Ind.) 93 N. E. 872; *O'Hara* v. *New York,* 46 App. Div. 518, 62 N. Y. Supp. 146; *Morgan* v. *Denver,* 14 Colo. App. 147, 59 Pac. 619.

Why should this plaintiff institute proceedings for reinstatement, when he has never been removed? He has never lost title to the office, and can establish that fact as well in this action as in any other.

When there is a *de facto* officer in possession, there is good reason for saying that the *de jure* officer should first establish his title; for otherwise, there would be a determination of that question in a suit to which a rival claimant was not a party, and the interests of the city might be jeopardized. But when, as here, no successor has been appointed, there is no advantage to anyone in requiring two suits, for one will do as well.

An office having emoluments attached to it is a thing of value, though it is primarily an agency for public purposes. The right to the emoluments attaches to and follows the legal title to the office.  A *de jure* officer cannot be deprived thereof without due process of law. *Andrews* v. *Portland,* 79 Me. 484, 10 Atl. 458, 10 Am. St. Rep. 280; *Nichols* v. *MacLean,* 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730; *Andrews* v. *King,* 77 Me. 231; *Chicago* v. *Luthardt,* 191 Ill. 516, 61 N. E. 410.

Such an officer may recover his salary after an attempted removal which fails for illegality.  The action of Mayor Bigelow being ineffective as a removal, the plaintiff is entitled to recover. 1 Dill. Mun. Corp. §429; 2 Abbott Mun. Corp. §641; 2 McQuillan Mun. Corp. §520; *Shaw* v. *Macon,* 19 Ga. 468; *Stadler*

v. *Detroit,* 13 Mich. 346; *Houston* v. *Estes,* 35 Tex. Civ. App. 99, 79 S. W. 848; *U. S.* v. *Wickersham,* 201 U. S. 390, 26 Sup. Ct. 469, 50 L. ed. 798.

Of the amount of the recovery below the defendant makes no complaint in its brief, so on that subject we say nothing.

*Affirmed.*