WILLIAM T. GRINNELL *vs*. EDWARD WILKINSON.

JULY 5, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Workmen's Compensation Act. Injuries Outside the Jurisdiction.*

Under the Workmen's Compensation Act the relation of employer and employee is contractual and the terms of the act are to be read as a part of every contract of service between those subject to its terms. It includes injuries arising out of the State as well as those arising within it.

PETITION under the Workmen's Compensation Act. Heard on appeal of petitioner and sustained.

PARKHURST, J. This is a petition for compensation under Public Laws, Chap. 831 (1912), commonly known as the "Workmen's Compensation Act." The petitioner alleges and the answer admits that the parties were subject to the provisions of the Workmen's Compensation Act. The petitioner was employed by respondent as a carpenter and his employment commenced at Providence, in the course

whereof he was directed by his employer to go without the State, to New Haven, in the State of Connecticut, to complete work already commenced by him at Providence. While so engaged at New Haven he claimed to have received a splinter in his finger, on the 20th day of May, 1915, and that as a result of receiving said splinter in the middle finger of his right hand, blood poisoning set in from which he has never recovered. The petitioner claims that he personally brought the attention of his employer to his injury at the hospital, within a period of thirty days from the occurrence of the accident. The petition was heard before the Presiding Justice of the Superior Court at Providence and denied for the reason substantially that the statute does not apply because the injury was received outside the state. The matter is before this court on an appeal duly taken by the petitioner from the decision of the Presiding Justice.

The question to be decided is whether our statute gives to an employee whose contract of service is within its scope the right to recover compensation for injuries resulting from an accident in the State of Connecticut.

The petitioner in his reasons of appeal says that the decree appealed from "is against the evidence and the weight thereof." But the Presiding Justice, ruling as above against the petitioner and dismissing the petition solely on the point of law stated, made no findings of fact upon the evidence adduced before him; this court therefore has before it upon this appeal only the question of law involved in the decision above referred to; it has no jurisdiction under the act to try and determine the facts of the case. Petitioner's counsel offered no argument upon this point; the argument on this point on behalf of the respondent by his counsel is disregarded for the reasons stated.

Since acts relating to workmen's compensation are of comparatively recent date in this country, the precise question raised in this case has been presented to the courts

of this country in comparatively few instances, and quite recently.

The Presiding Justice in his rescript dismissing this petition cites only four cases, viz.: *Gould's Case*, 215 Mass. 480; *Johnson* v. *Nelson*, 150 N. W. 620; *Hotez* v. *Marine Co.*, 144 N. Y. Supp. 355, and *Tomalin* v. *Pearson*, 100 Law Times, Rep. 685 (also found in 2 B. W. C. C. 1). Of these cases *Johnson* v. *Nelson* is a Minnesota case decided January 8, 1915, and simply holds, substantially, that the plaintiff was an employee whose contract of service related only to work in Wisconsin and was carried out in that state where he was injured, and that both he and his employer were subject to the terms of the Workmen's Compensation Act of Wisconsin, and that his right of recovery was governed thereby; that the sole remedy of the plaintiff was under the Wisconsin Act, and that he could not recover in Minnesota. This case has no bearing upon the question here under consideration.

The case of *Hotez* v. *Marine Co.*, 144 N. Y. Supp. 355 (1913), was for a marine tort where the complainant charged negligence attempted to be imputed to the owner of a vessel through a subordinate officer. The case was in tort for negligence, and it was held that the Workmen's Compensation Act of New York did not cover the case of torts committed without the State, and that the action could not be maintained as a common law action under the evidence. This case has no application to the case at bar.

The case of *Tomalin* v. *Pearson*, 100 L. T. Rep. 685 (2 B. W. C. C. 1) in the court of appeal for England relates to the English Workmen's Compensation Act, and holds that an employee injured in work done at Malta under contract with a British employer has no right of recovery, under the English Act, which by its terms as interpreted by the English Court covers only injuries received within the territorial limits of the United Kingdom. This construction is based principally upon the fact that there is no express language in the act to cover injuries suffered outside the United Kingdom, except in case of a limited class of seamen;

and it appears to be held that this express extension to a limited class of seamen is evidence of an intention on the part of Parliament to limit the effect of the act otherwise as above stated. (See, also, *Hicks* v. *Maxton*, 1 B. W. C. C. 150; *Schwartz* v. *India Rubber Co.*, L. R. 2 K. B. 1912, 299, where the English Act is held not to apply to foreign injuries).

The leading case in this country up to 1913 was *Gould's Case*, 215 Mass. 480, decided September 12, 1913, and it was doubtless upon this authority that the Presiding Justice relied in his decision, and he is, at first sight, apparently supported thereby. Since that time, however, certain other cases have been decided which in the opinion of this court more closly apply to our act and which we shall later discuss.

*Gould's Case, supra,* was a petition under the Massachusetts Act; the petitioner was a citizen resident of Massachusetts and made a contract of service with a Massachusetts corporation and accepted the benefits of the act. "In the course of his employment he received the injury out of which the claim arises in the State of New York. He was principally employed in Massachusetts, but at times incidentally worked in New York and other States." After discussing certain incidental questions of practice which are not here material, the court proceeds to discuss the construction of the act, and while conceding that the Legislature has power if it sees fit to give the act such scope as to cover injuries received outside the State, finds no express words giving it such scope, which is deemed to be significant; and then proceeds to examine its provisions in detail to see whether there is any intent to be gathered therefrom to make the act apply to such injuries. At page 484, the court says:

"A consideration of the act in detail fails to disclose any plain intent to that end. On the contrary, several provisions indicate solely intrastate operation. Part II, § 19, provides that the employee who has received an injury shall submit himself on request to an examination 'by a physician or surgeon authorized to practice medicine under the laws of the Commonwealth.' It hardly can be inferred from this

language that the Legislature intended that physicians or surgeons from Massachusetts should journey to the place of injury, or that those authorized to practice under the laws of other states should make the examination. Part III of the act, which relates to procedure, and which as has been pointed out creates a wholly new method of procedure, deals only with boards and courts within this Commonwealth. No provision is made for enforcing rights as to injuries occurring outside the State. Part III, § 7, as amended by St. 1912, c. 571, § 12, requires that the hearings of the committee on arbitration 'be held in the city or town where the injury occurred.' Obviously, this cannot relate to injuries received outside this Commonwealth. Section II, as amended by St. 1912, c. 571, § 14, provides that in the event of resort to the courts copies of the papers shall be presented 'to the Superior Court for the county in which the injury occurred or for the county of Suffolk.' The words 'for the county of Suffolk' may be presumed to be inserted for convenience, as the offices of the Industrial Accident Board are in Suffolk and courts are continually in session in that county, and not in order to make provsion for injuries occurring outside the State. Part III, § 18, requires the employer, within forty-eight hours, not counting Sundays and legal holidays, after the accident resulting in personal injury, to make a report 'in writing to the Industrial Accident Board.' Part IV, § 18, authorizes the directors of the Massachusetts Employees' Insurance Association, created by the act, to make and enforce reasonable rules and regulations for the prevention of injuries on the premises of the subscribers, 'and for this purpose the inspectors of the association shall have free access to all such premises during regular working hours.' This section is in furtherance of that part of the purpose of the act as set forth in its title for the prevention of industrial injuries. But it cannot be operative outside of Massachusetts." . . .

From these various provisions of the Massachusetts Act the court finds an intent to confine the operation of the act to

accidental injuries happening in the State, and that it is not applicable to injuries arising out of the State. On page 488, the court says: "If employees and employers from different States carry their domiciliary personal injury law with them into other jurisdictions, confusion would ensue in the administration of the law, and at least the appearance of inequality among those working under similar conditions. If such a result had been intended by the General Court it cannot be doubted that it would have been disclosed in unambiguous words."

These remarks do not seem to be applicable to the case before the court, but seem to be used *arguendo*, in the general discussion of the scope and intent of such Acts generally. In this State we have found no difficulty such as that last referred to in the administration of the law; for in the case of *Pendar* v. *The H. & B. American Machine Co.*, 35 R. I. 321 (1913), a case of an injury which occurred in Massachusetts to a citizen of Rhode Island who was employed in Massachusetts by a corporation which had taken the benefit of the act in that State we held that: "Where an accident occurred in a foreign jurisdiction, under whose laws plaintiff waived his right to bring a common law action to recover by failing to give notice in writing to his employer at the time of the hiring that he claimed his right to bring such action, plaintiff cannot bring in this State an action at common law to recover for the injury." See, also, *Johnson* v. *Nelson*, 150 N. W. 620 (Minn. 1915); *Albanese* v. *Stewart et al.*, 138 N. Y. Supp. 942; *Schweitzer* v. *Hamburg Am. Line*, 149 App. Div. 900; *Same* v. *Same*, 78 Misc. (N. Y.) 448.

Returning now to the specific provisions of the Massachusetts Act above referred to in the quotation from *Gould's Case*, *supra*, upon which the court principally relies to support its finding that the Massachusetts Act was intended to apply solely to injuries received within that State, we find only two of these provisions which are the same in substance as are certain provisions of the act of this State. The first of these is the provision that the employee "shall,

after an injury, at reasonable times during the continuance of his disability, if so requested by his employer, submit himself to an examination by a physician or surgeon authorized to practice medicine under the laws of the State," etc. (Pub. Laws, 1912, Chap. 831, Art. II, § 21, p. 436.)

We do not find that this provision is important in determining the intent of our law, bearing in mind at all times that our law nowhere in terms excludes the consideration of injuries occurring out of the State, but in broad and general terms gives to the employee compensation for "personal injury by accident arising out of and in the course of his employment." (Art. II, § I). The provision for examination by a physician or surgeon is for the benefit and protection of the employer, and the act further provides: "If such employee refuses to submit himself for any examination provided for in this act, or in any way obstructs any such examination, his rights to compensation shall be suspended and his compensation during such period of suspension may be forfeited." The provisions here referred to are general and apply to any time after the injury, during the pendency of proceedings, and during the operation of the decree, "during the continuance of his disability." It is not impossible for such examination to be made, at the request of the employer, even in another State; it will probably happen in most cases that a resident of this State injured elsewhere will come home for treatment and for the prosecution of his remedy under the law, and will be subject to examination here. At all events when the case arises it will be disposed of according to the act; and we do not propose further to discuss this provision until it shall be necessary, except to repeat that in our opinion it is not of importance in determining the general intent of the act (See *Rounsaville* v. *Central R. Co.* (N. J.), *infra*, where there is a similar provision in the law; but no inference of intent to confine the act to injuries arising in the State is drawn.)

The next provisions of the Massachusetts Act, referred to in *Gould's Case, supra,* relate to procedure, requiring that

hearing "be held in the city or town where the injury occurred;" that papers shall be presented "to the Superior Court for the county in which the injury occurred," etc. These provisions in our opinion furnish the best ground in support of the decision in *Gould's Case;* there are no such provisions in the Rhode Island Act, which provides (Art. III, § 16, p. 444). "Sec. 16. Proceedings shall be brought either in the county where the accident occurred or in the county where the employer or employee lives or has a usual place of business. The court where any proceedings is brought shall have power to grant a change of venue." By the general provisions of the act original jurisdiction of these proceedings is vested in the Superior Court. From the provisions last quoted it will be seen that there is no difficulty about the jurisdiction, and it would almost seem that the General Assembly in making this provision had taken pains to provide for jurisdiction in cases where the injury occurred out of the State. In our opinion no restriction of the scope of the act is to be found in this regard.

The provision regarding reports of injuries is found in Public Laws, January, 1915, Chapter 1268, p. 261, *et seq.*, and in some respects is similar to the provision of the Massachusetts Act referred to in *Gould's Case, supra.* We do not regard it as of the slightest importance in determining the construction and scope of the act as a whole. The other provisions referred to in *Gould's Case* are not found in our act. We do not regard the decision in *Gould's Case* as a precedent which we should follow, partly because of the differences between the act there discussed and our act, as above shown; partly because we do not agree with certain reasoning therein set forth. We prefer the broader view set forth in certain cases hereafter cited from Connecticut, New Jersey and New York.

The Workmen's Compensation Act of Connecticut (Laws of 1913, c. 138 of Public Acts; see, also, 2 Bradbury's Workman's Compensation, p. 1144) in its general purpose,

scope and provisions, with minor differences in details, is very similar to the Rhode Island Act. The same question here involved arose under the act and was decided in June, 1915, in the case of *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 94 Atl. 372. The case was a proceeding for compensation from the defendant, a Connecticut corporation, for the death of an employee, a citizen of Connecticut, who was in the employ of the defendant on a towboat and whose death occurred by drowning in Raritan Bay, New Jersey, when the tug on which he was employed foundered. After disposing of certain contentions advanced by defendant that the petitioner's claim was cognizable only in the admiralty courts, or under the Federal Employer's Liability Act, and some points of practice, the court in its opinion says (p. 374): "We come then to the next question, whether our compensation act provides for compensation for injuries received outside our State and arising out of and in the course of the employment. The respondent insists that our act has no extraterritorial effect. That is not the precise question to be determined, but, rather, whether our act provides for compensation arising out of a contract of employment authorized by our act, for injuries suffered without our jurisdiction. If our act authorizes such a contract, recovery may be had; otherwise, not.

"Unless the intention to have a statute operate beyond the limits of a State is clearly expressed or reasonably to be inferred from the language of the act, or from its purpose, subject-matter, or history, the presumption is that the statute is intended to have no extraterritorial effect. A like presumption should control the operation of a contract based upon a statutory authority.

"We find no clearly expressed intention in our act that the contract authorized should operate without the State. If found in the act, it must be found as an inference reasonably to be inferred from the language of the act, read in the light of its purpose, subject-matter, and history. In our search for such an intention it is all important that we do

not forget the remedial character of the act, and that we construe its provisions broadly and liberally 'in order to effectuate its purpose.' *Hotel Bond Co., Appeal*, 89 Conn. 143, 93 Atl. 254.

"The remedy provided by our compensation act is substitutionary in character, furnishing what was purposed to be a more humanitarian and economical system as a substitute for one deemed wasteful to industrial enterprises and commerce, and unfair to employees. Its intent was to afford its protection to all Connecticut employers and employees who might voluntarily choose to make its provision for compensation for injury a part of their contracts of employment. It assumed that accident is incident to employment, and purposes to charge its cost in the case of every injury not caused by the willful and serious misconduct or intoxication of the injured employee to the industry in which it occurred. It intended that the employee should know what compensation he or his dependents would receive in the event of injury, and that payment should be made speedily by a procedure at once simple and inexpensive. It intended that the employer should know his liability in this regard, and so might include it among the items charged to operation. If our act intends its contracts of employment to include compensation for injuries occurring only within our jurisdiction it manifestly defeats its own ends. In that case the employer may not charge to the industry the compensation for injuries occurring without the State, and the employee or his dependents may not collect the same. Neither employer nor employee can know what portion of this period of employment will be subject to the provisions of the act, and no provision for insurance of this liability will be practically possible, since it may not ordinarily be known what part of the service will be in and what part out of the State, or in what jurisdiction the service will be performed, in industries and commercial enterprises engaged in intrastate and interstate employment. The State boundary is not the limit of very many businesses. To subject

them to the laws of the many jurisdictions in which they may be engaged will be especially burdensome to them, and involve them probably in greater expense and liability and far greater difficulties than under the old system. Equally hard will it prove to the employee since he must pursue his remedy in the State of the accident, or the federal court applying that State's law, and thus he may be brought under any one of many different compensation acts, with whose provisions he cannot hope to be familiar, some acts contractual in character, some compulsory, some optional, and some *ex delicto*, and he may find he has forfeited the benefit of the foreign act through failure to comply with its provisions. A reading of the several acts now in force convinces us that these difficulties are not imaginative, but imminent actualities.

"Is it reasonable to infer that our legislature, inaugurating a new system, based upon humanitarian and economical considerations, should intentionally frustrate the object of the new system, and cast a multitude of employers and employees into a maelstrom of trouble, uncertainty, and liability? On the other hand, is it not reasonable to infer that the Legislature, having bottomed the right to compensation upon contract, deemed unimportant the place of injury, since it must be presumed to have known that it, and not the place of injury, would govern the recovery. Such a construction of the act would lift insuperable burdens from industry and commerce and workmen, and give to each his course and the ascertained fruits of the contract of his will. Whether the contract shall include injuries in a jurisdiction other than where the contract was made is determined by the expressions or implications of each act.

"Section 1, pt. A, of our act recites that, 'in an action to recover damages for personal injury,' certain defences shall not be available. Here is no limitation to injuries received within the State. We through comity, enforce action for injuries received outside the State when not against our law or public policy. The natural construction of this language makes it include every action wherever it originates.

Section 1, pt. B, recites that when employer and employee have accepted part B, the employer shall not be liable to any action for damages for personal injury sustained by his employee in the course of his employment, but the employer shall pay compensation on account of such injury as provided by the act.   Do not the words 'any action' mean what they say ?   And have we any more right to insert after them 'within the State' than 'within or without the State ?'   In this section the acceptance of the act is by its express terms a renunciation and waiver of all rights and claims arising out of injuries sustained in the course of the employment, except as specified.   It seems to us plain that the rights and claims waived are not merely those arising in Connecticut, but anywhere.

"In Section 8, pt. B, compensation is required to be paid for 'any injury' which incapacitates for more than two weeks. There is no warrant for construing any injury to consist of one arising within the State.

"By Section 20 every employer who has accepted part B 'shall keep a record of such injuries sustained by his employees in the course of their employment . . . and send each week to the commissioner such report of said injuries as the commissioner may require.'   It cannot be that the record intended was solely of the injuries happening within the State.   Obviously it was intended to embrace all injuries occurring to such employees everywhere; any other construction would do violence to the ordinary meaning of the word used and to the manifest purpose in keeping the record.

"Similarly the notice of injury of Section 21, and the voluntary agreement of Section 22, relate to every injury, and not merely those occurring within the State.

"Under Section 29 any employer may enter into a substitute system of compensation with his employees in lieu of the compensation of the act.   The Legislature had the undoubted power to make the substitute system apply to injuries without as well as those within the State.   Is it likely that the Legislature intended a substitute system

applicable to its employees when employed within the State, and inapplicable when employed elsewhere ? How could the employer engaged in intrastate and interstate employment take advantage of the substitute system ? If the agreement of this character had to be confined to the injuries received in the State, neither employer nor employee would undertake it. Practically the provision for a substitute system would be nugatory.

"Certain sections of the act are referred to as indicating that the act has relation exclusively to intrastate injuries. Thus Section 7, which requires the employer to furnish medical and surgical aid, and Section 23, which requires the injured employee to submit himself to examination by a reputable physician, are said necessarily to refer to Connecticut practitioners. We see no practical reason why these sections may not refer to the practitioner, without the State as well as within it. Unless this limitation be read in the section, the language used does not express the limitation."

. . .

The opinion then proceeds to discuss certain questions as to hearings before commissioners and courts, not contained in the Rhode Island Act, which are not material here; and proceeds, page 379:

"In legislative acts inaugurating a new system not infrequently are found contradictory provisions, and it becomes the duty of the court to reconcile them so far as it can. It does this whenever it is possible in such way as to sustain the act and carry out its purposes. This we believe to be our present duty. In a sense the injury may be said to have been sustained in the place of the contract, and if appeal is taken, in cases of injury, occurring without the State, to the county of the contract, the terms of the act will be reasonably satisfied. The precise question we are considering has been the subject of discussion in two cases. One under the New Jersey Act, a contractual optional act very similar to our own, where the trial court, in *Deeny* v. *Wright & Cobb Lighterage Co.*, 36 N. J. Law J. 121, construed the contract

under the New Jersey Act as we construe these contracts. The other under the Massachusetts Act, where the Supreme Court construed their act as confined to accidents within the State. *Gould's Case*, 215 Mass. 480, 102 N. E. 693, Ann. Cas. 1914, D, 372. We must accept the construction accorded the Massachusetts Act by its Supreme Court. It may be well, however, to point out that the court does not state that its act is contractual in character. That, as we have indicated, is of final importance in the conclusion we reach concerning our own act. Then, too, under the Massachusetts Act, the employee is merely the beneficiary under a contract between the employer and the insured; with us the employer and employee enter into a contract relation. In its reference to and comment upon certain sections of their act the court says that there must be found within the act from 'unequivocal language,' or 'plain and unmistakable words,' that the act was intended to relate to injuries without the Commonwealth. We have adopted a broader rule. We read our act in the light of the purpose, subject-matter, and history of the act to determine whether it expressly or by reasonable inference intended to include in its contract injuries without our jurisdiction. This is our ordinary rule in the interpretation of statutes. The Massachusetts court states that: 'The subject of personal injuries received by a workman in the course of his employment is within the control of the sovereign power where the injury occurs.'

"And it argues that, if the act had intended employers and employees from different states to carry their domiciliary personal injury law with them into other jurisdictions, it would have expressed its intent in unambiguous words. This argument concerns a proceeding to enforce an *ex delicto* claim, not one for compensation by way of contract. It is also argued that, if an act is given extraterritorial force, similar effect must be given to like laws of other States. If contracts of employment cover compensation for injuries outside the State, recovery for these will be governed by the usual rules for the construction and enforcement of all

contracts. We should give similar effect to contracts of like character to those before us, though made under a compensation act of another jurisdiction, provided they did not conflict with our law or public policy, and the machinery provided for the ascertainment and collection of the compensation could be used in our jurisdiction.

"Where, as with us, the determination of the award is committed to a board or commission under a specified procedure, there will be serious obstacles to the enforcement of the contract in a foreign jurisdiction. Bradbury's Workman's Compensation Law (Ed. 1914) p. 52. If it should be necessary to so rule, no hardship would result. The parties in interest would be relegated to the place where they had elected to make their contract and no questions of conflict of laws could arise. At the base of this question is the character of the compensation. Mr. Bradbury, repudiating his earlier view, stoutly maintains that, if the act be contractual, the contracts arising will, unless a contrary intent appears, be found to cover injuries without as well as within the State. We think his later conclusion sound and one which will prove beneficial alike to employer and employee."

Also in June, 1915, the Supreme Court of New Jersey passed upon the question whether the act of that state applies where the accident occurs in another state, in the case of *Rounsaville* v. *Central R. Co.*, 94 Atl. 392. In this case the petitioner was employed in New Jersey by the defendant, a New Jersey corporation, as a brakeman on a train which went into Pennsylvania, and was injured in Pennsylvania; his wages were paid in New Jersey; it was held that his contract of service was a New Jersey contract; both parties were subject to the New Jersey Act. It was held that the act covered the case, and the petitioner could maintain his proceeding. The New Jersey Act is, in its general features and scope very similar to the Connecticut and Rhode Island Acts; the provision requiring the employee to submit to medical examination in the state by a physician author-

ized to practice medicine in the state is almost the same in essential terms as in the Rhode Island, and differs slightly from the Connecticut Act. (See Laws of New Jersey, 1911, Chap. 95, § 17, p. 141.) After disposing of certain preliminary questions and deciding that the liability of the employer under the act was contractual, and discussing a certain previous decision not directly in point, the court said, page 393: "We are now dealing with the simpler question, whether a New Jersey court will enforce a New Jersey contract, according to the terms of a New Jersey statute. The question hardly calls for an answer. The place where the accident occurs is of no more relevance than is the place of accident to the assured, in an action on a contract of accident insurance, or the place of the death of the assured in an action in a contract of life insurance."

It is notable that these two cases should each have been independently decided by the courts of Connecticut and New Jersey in June, 1915, and have reached the same conclusion upon the same point in the consideration of statutes essentially similar.

The latest case which has come to our attention is *Post* v. *Burger & Gohlke et al.*, 111 N. E. 351 (January, 1916), a New York case, where the same question arose under the Workmen's Compensation Act of New York. The case follows substantially the same line of argument and arrives at the same conclusion as the cases of *Kennerson* v. *Thames Towboat Co.*, *supra*, and *Rounsaville* v. *Central R. Co.*, *supra*, both of which it cites with approval. See, also, *Deeny* v. *Wright & Cobb, &c., Co.*, 36 N. J. Law J. 121; 1 Bradbury Workman's Compensation, p. 50, 52 *et seq.*, cited with approval in the Kennerson case, *supra*, p. 378, and in the *Post* case, *supra*, p. 354.

We are of the opinion that the reasoning of the cases above cited from New York, New Jersey and Connecticut is quite applicable to the case at bar; that under the Workmen's Compensation Act of Rhode Island the relation of employer and employee is contractual and the terms of the act are to

be read as a part of every contract of service between those subject to its terms; that on principle and in reason and in view of the purpose, scope and character of the act it should be construed and held to include injuries arising out of the State as well as those arising within it; and that the weight of authority upon acts similar to our own gives full support to our conclusion. *Gould's Case, supra,* stands alone so far as any cases have come to our attention and is only deemed to be authoritative on the particular statute therein considered, which we regard as different from ours in many important respects.

The Superior Court was in error in dismissing the petition in this cause for the reasons above set forth; the appeal is sustained, the decree of the Superior Court is reversed, and the cause is remanded to the Superior Court for a trial upon its merits.

*George A. Breaden, Edward W. Bradford,* for petitioner.
*Ernest P. B. Atwood,* for respondent.