*Hubacz v. Village of Waterbury*, No. 496-8-15 Wncv (Tomasi, J., Jan. 19, 2016)
[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 496-8-15 Wncv |

Adam Hubacz,
  Plaintiff,

 v.

The Village of Waterbury, Vermont,
  Defendant.

Opinion And Order
The Village's Partial Motion To Dismiss

In 2012, the Village of Waterbury terminated Plaintiff Adam Hubacz's employment as a Village police officer, pursuant to 24 V.S.A. § 1932, because the Washington County State's Attorney then in office had decided to not prosecute any cases involving him.  But, it did not at that time purport to terminate him for the reasons underlying the State's Attorney's decision.  *Hubacz v. Village of Waterbury*, No. 2:12–cv–39, 2014 WL 1493981, *1–2 (D. Vt. Apr. 15, 2014).  Mr. Hubacz sought Rule 75 review of the termination decision in the Federal District Court of Vermont. That court ruled that the sole basis asserted for termination, the State's Attorney's decision to not prosecute Mr. Hubacz's cases, did not fit the "negligence" standard for termination under § 1932.  He observed that the Village might have chosen to develop evidence that would have met the § 1932 standard or might have terminated him for having a "legal disability" supporting a termination for "cause" pursuant to § 1931.  He remanded the Rule 75 matter to the Village for further

proceedings. *Id.* at *8. After such proceedings, the Village found that Mr. Hubacz's

termination was proper under both § 1931 and § 1932.[1]

In this case, Mr. Hubacz again seeks Rule 75 review (Count 1) of the Village's

termination decision. He maintains that he now has been wrongfully discharged

twice and that, even if the second termination decision is valid, he is entitled to

damages that accrued between the first and second decisions. In other words, he

claims that the second discharge decision cannot relate back to the first. He also

seeks relief for the nonpayment of wages and benefits pursuant to 21 V.S.A. §§ 345,

347 (Counts 2 and 3 of the Complaint), which he believes started accruing at the

time of his first termination or had accrued at the time of the federal court's remand

decision.

In the instant motion, the Village seeks Rule 12(b)(6) dismissal of the

nonpayment claims. The Rule 75 matter is not currently at issue.

1. *Standard*

The Vermont Supreme Court has described the familiar standard for motions

to dismiss for failure to state a claim as follows:

> "A motion to dismiss . . . is not favored and rarely granted." This is
> especially true "when the asserted theory of liability is novel or
> extreme," as such cases "should be explored in the light of facts as
> developed by the evidence, and, generally, not dismissed before trial
> because of the mere novelty of the allegations." In reviewing a motion
> to dismiss, we consider whether, taking all of the nonmoving party's
> factual allegations as true, "'it appears beyond doubt' that there exist

---

[1] The full history of the extensive litigation between the Village and Mr. Hubacz leading up to the Village's second termination decision is detailed in *Hubacz v. Village of Waterbury*, No. 2015–032, 2015 WL 3767123 (Vt. June 2015), and need not be recited here.

2

no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted).

2.    *Analysis*

The Village seeks dismissal for the following alternative reasons: (1) the nonpayment claims are untimely because the Village has not yet ruled on what relief may be available if a right to relief is established; (2) there is no private right of action pursuant to 21 V.S.A. § 345; and (3) §§ 345 and 347 do not apply to periods of time during which a former employee was not actually employed by the Village, and Mr. Hubacz has not been employed by the Village since he was originally terminated. The Court is persuaded by the Village's third argument and does not address the first two.

Mr. Hubacz argues that the federal court's remand decision amounts to a determination that his original termination was "illegal" and "void" and that his right to compensation from the time of the first termination decision until the second then became fixed. Since that point, he contends that the Village has failed to compensate him in a timely manner in violation of 21 V.S.A. §§ 345 and 347. He expressly alleges, however, that his employment with the Village has never been reinstated following his original termination in January 2012. Complaint ¶ 15. In this case, that fact is determinative of the nonpayment claims.

3

The cited statutes simply do not apply under the circumstances presented here. The statutes upon which Mr. Hubacz relies are part of a subchapter of statutes that control the promptness and methods by which employers must compensate employees as an ongoing matter for services provided. 21 V.S.A. §§ 341–348; *Stowell v. Action Moving & Storage, Inc.*, 2007 VT 46, ¶ 8, 182 Vt. 98, 102 ("[T]he overriding intent of" these statutes "is to ensure that workers are paid in a timely manner."). In context, it is clear that this subchapter applies to current employment relationships. It is not intended to control the scope of or create any rights regarding damages or other relief in wrongful discharge cases, and this is a wrongful discharge case.

That view of the statute finds textual support in other provisions of the law. For instance, "wages" is defined as "all remuneration payable for services rendered by an employee, including salary, commissions, and incentive pay." 21 V.S.A. § 341(5). A terminated employee is no longer performing services for the employer and thus is not earning wages for purposes of these statutes. While that employee may become entitled to damages if the termination was wrongful, damages are compensation for the wages or salary that would have been earned, not wages that were earned. Similarly, section 342(a)(1) requires employers, subject to statutory exceptions, to pay employees "doing and transacting business within the State" weekly "the wages earned by each employee." These and related provisions plainly contemplate an ongoing employment relationship.

4

This subchapter also describes requirements when employment ends. An employee who voluntarily ends employment is paid on the regularly scheduled final payday. 21 V.S.A. § 342(b)(1). An employee who is discharged by the employer must be paid within 72 hours. *Id.* § 342(b)(2). There is no distinction for purposes of § 342 between a wrongfully discharged employee and lawfully discharged one, and there is no *continuing* right to the prompt payment of "wages" in either event.

Section 345 establishes a fine for violations of §§ 342 and 343. Section 347 provides that "[a]n employer who violates section 342 or 343 of this title shall forfeit to the individual injured twice the value thereof, to be recovered in a civil action, and all costs and reasonable attorney's fees." There is no allegation in this case, however, that Mr. Hubacz was improperly paid during any period of time in which he actually was employed by the Village or with regard to his final paycheck. There is no allegation that he performed any service for the Village as an employee since his original termination. The Village terminated his employment, never employed him again, and he provided no services to the Village. Sections 342 and 343 are inapplicable in this context.

Indeed, policy argues against any contrary construction. Applying these statutes in a wrongful discharge case such as this would create an automatic right to double damages and attorney's fees for every wrongful discharge. Yet, despite the age of the statutes at issue, no case has so held, and there is nothing in the statutes to suggest that the Legislature ever intended them to have that effect.

Mr. Hubacz next argues that sections 342 and 342 need not apply in every discharge case but should apply in this case because he is (or was) a public "officer." He contends that he never lost his job because his "illegal" removal from office (the first termination decision) did not affect his title to office or his right to receive ongoing wages. He takes nothing from this alternative argument.

There has never been any judicial determination that Mr. Hubacz's termination was illegal or void or that he is entitled to relief due to his original termination. Additionally, while the parties spar over whether police officers in Vermont are properly considered to be municipal officers, as opposed to mere employees, the issue does not need to be decided because it does not have the consequence that Mr. Hubacz claims with regard to the wage-payment statutes.

Mr. Hubacz persuaded the federal court only that there was an error in the original proceedings sufficient to require a remand to the Village. In sum, the court remanded the Rule 75 matter to the Village for further proceedings under 24 V.S.A. § 1932 (the asserted statutory basis for the first termination) and for consideration of whether § 1931 might provide the more apt statutory basis for termination in the circumstances. *Hubacz v. Village of Waterbury*, No. 2:12–cv–39, 2014 WL 1493981, *8 (D. Vt. Apr. 15, 2014). The court never purported to reinstate Mr. Hubacz's employment (or to reinstate him to paid administrative leave) and expressly took no position with regard to possible relief. *Id.* at *9 n.4 ("Any questions with respect to compensation may be presented to the Village Trustees for their consideration. The Court offers no opinion with respect to Hubacz's legal entitlement to back pay,

6

damages, or attorney's fees."); *Hubacz v. Village of Waterbury*, No. 2:14–cv–134, 2014 WL 4060314, \*1 (D. Vt. Aug. 14, 2014) ("The Court did not intend for its ruling to be used as a basis for Hubacz to claim a right to immediate reinstatement as an active duty police officer, or to otherwise alter the status quo that existed prior the Village Trustees' initial ruling."). On remand, the Village held a new hearing and issued a new termination decision responsive to the Court's ruling. The issue of relief was never reached.

Mr. Hubacz relies, *inter alia*, on *Finneran v. City of Burlington*, 89 Vt. 1 (1915), for the proposition that he remains employed and entitled to wages until cause for his termination is finally established. Mr. Hubacz reads far too much into that decision. There, a municipal police officer was terminated due to his age and he filed suit against the City. The Vermont Supreme Court found that his termination was "illegal and void" and that he had been wrongfully fired. *Id*. at 4.

The City argued that the right to damages was premature until Mr. Finneran first established a right to reinstatement. *Id*. at 5. The City's contention appears to have been based on the idea that payment of the salary of an office to the *de facto* officeholder (the one actually in office) may preclude any right to that salary by the *de jure* officer (the one with the legal right to office*, i.e.,* Finneran). The legal issue is described in McQuillen as follows:

> Judicial precedent regarding whether payment of the salary or compensation of the office to a *de facto* officer will preclude recovery of it from the municipality by a *de jure* officer has been inconsistent. Particularly absent notice of claim by the de jure officer, payment to the de facto officer of the salary accorded the office, prior to the adverse settlement of title to the office, may often deprive the de jure officer of

7

the right to recover such salary from the public. Although one may be legally entitled to an office, where no affirmative action is taken during the term to establish title, he or she cannot ordinarily recover the salary appertaining to the office where the duties were performed by another who was paid by the municipal corporation. Good faith payment to a de facto officer or employee may not be an essential defense to suit by the *de jure* officer or employee. The theory is that the law protects the municipal corporation from a second payment of compensation once paid to one who actually discharged the duties of an office with color of title. This rule applies whether payment is in the form of salary or fees and whether the office is held by appointment or election.

4 McQuillin Mun. Corp. § 12:199 (3d ed.).

The Supreme Court concluded that such considerations did not apply in that case because no officer had been appointed to take Finneran's place. In the absence of a *de facto* officer, it concluded that Finneran need not establish, in the first instance, his right to the office and may proceed to recover damages for the illegal termination.[2]

While the Court noted that Finneran could proceed to "recover his salary," *id.*, in this court's view, that phraseology was intended only to mean that he could recover damages equal to the pay he would have received had he not been wrongfully terminated. In other words, *Finneran* stands for the unremarkable proposition that a municipal police officer who is wrongfully discharged is entitled to damages commensurate with backpay. The case has no bearing on actions under 21 V.S.A. §§ 345 and 347.[3]

---

[2] There is no indication that the Village has kept Mr. Hubacz's position vacant since his termination.

[3] Similarly, if this Court ultimately concludes that Mr. Hubacz never should have been terminated and should be reinstated (assuming that reinstatement would be

Neither *Finneran* nor the other authorities cited by Mr. Hubacz stand for the proposition that a municipal officer has the ongoing right to collect the salary of the office after removal while the propriety of the removal is being litigated but before it has been resolved. They also do not hold that a terminated officer, who later establishes that the termination was wrongful, somehow assumes the status of one who was never terminated in the first place for purposes of wage-payment statutes such as the ones at issue here. Rather, those decisions provide only that damages concerning a wrongfully terminated municipal officer will not be reduced by intervening employment elsewhere because such officers have no duty to mitigate damages. *Kaminsky v. City of New York*, 202 N.E.2d 557, 557 (N.Y. 1964); *Fitzsimmons v. City of Brooklyn*, 7 N.E. 787, 788 (N.Y. 1886); *Capobianco v. Incorporated Village of Massapequa Park*, 301 A.D.2d 553, 553 (N.Y. App. Div. 2003). Such precedents have no bearing on actions under 21 V.S.A. §§ 345 and 347.

Whether Mr. Hubacz may be entitled to relief for any period following his original termination has never been established in this or the related cases. The

---

an available remedy), characterizing his reinstatement as retroactive to the date of his initial termination would not render the Village liable under 21 V.S.A. §§ 345 and 347 for having not been giving him paychecks all along. Reinstatement is prospective relief, which is why, even when it is an available remedy, future damages or "front pay" may more appropriately be substituted for it. *See, e.g.*, *E.E.O.C. v. E.I. Du Pont De Nemours & Co.*, 480. F.3d. 724, 732 (5th Cir. 2007) ("Although reinstatement is preferred [in ADA cases], frontpay may be awarded if reinstatement is not feasible."); *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (1988) ("The remedy [in ADEA cases] may include frontpay, that is, monetary relief, in lieu of reinstatement."). The fiction of retroactive reinstatement might have utility in calculating back pay and related damages, but it would not resurrect rights and duties under §§ 345 and 347 that did not exist when there was no employment relationship.

right to and extent of any such damages are part of his Rule 75 case. No matter how those issues unfold in the Rule 75 context, they cannot lead to a meritorious claim pursuant to 21 V.S.A. §§ 345 and 347 because Mr. Hubacz has never had an ongoing employment relationship with the Village since his original termination. As noted above, the language of the statutes supports that conclusion, and there is simply no indication that the Legislature intended the wage-payment statutes to apply under the circumstances of this case.

Order

For the foregoing reasons, the Village's Motion to Dismiss is granted.

Dated this 15th day of January, 2016, at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Court Judge