No. 9237.

THE INDUSTRIAL COMMISSION ET AL. *v.* AETNA LIFE INSURANCE COMPANY.

1. WORKMEN'S COMPENSATION ACT—*Construction.*   Statutes of this character are to be liberally construed, to the end that their beneficent purpose may be accomplished.

2. —— *When is Employee in the Course of his Employment.*   One employed by a building company as foreman, in charge of the erection of certain buildings at different localities in several of the western states, had completed one of these buildings and had taken passage with a friend in an auto car, to go to another locality, in a different state, where he was to proceed with another building.   He came to his death from the accidental overturning of the auto car.   *Held* that he was "performing service arising out of and in the course of his employment," within the meaning of the statute.   (Laws 1915 c. 179, sec. 8.)   *Industrial Commission v. Anderson,* 169 Pac. 135, distinguished.

3. ——STATUTE—*Extra Territorial Effect.* The law of the place of contract controls the rights and liabilities both of the employer and employee.   Both being citizens of Colorado and residing here, and the contract of employment having been made here, *held* that the death of the employee, occurring in another state, while there upon the affairs of the master, and under his orders, entitled his widow and child to compensation.

*Error to the Denver District Court, Hon. Harlet P. Burke, Judge.*

Hon. LESLIE E. HUBBARD, Attorney General, Mr. JOHN L. SCHWEIGERT, Assistant Attorney General, and Mr. WALTER E. SCHWED, for plaintiff in error.

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, and Mr. JOHN P. AKOLT, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

THIS is an appeal by The Industrial Commission of the state, from a judgment of the District Court vacating an award by that Commission under the Workmen's Compensation statute. The claim for compensation is by Cora M. Lynch, widow, and Clyde and Orville Lynch, dependent children of Charles E. Lynch, deceased.

The cause was tried upon an agreed statement of facts both before the Commission and the District Court, as follows:

"Charles E. Lynch, from a time prior to August 1, 1915, when the Workmen's Compensation Act became effective, and until the time of his death, on September 14, 1915, was an employee of The C. E. Walker Contracting Company. Mr. Lynch was a resident of the State of Colorado, and The C. E. Walker Contracting Company was and is a Colorado Corporation, with its principal office in the City and County of Denver. The contract whereby Mr. Lynch was originally employed or hired was made in the State of Colorado.

The C. E. Walker Contracting Company has a general contract with The Mountain States Telephone & Telegraph Company for the construction of telephone exchange buildings, at different points in the states of Colorado, Wyoming, Idaho, Montana, Utah, Arizona, and New Mexico. Lynch was employed to act as foreman in connection with the construction of these buildings.

On September 13, 1916, Lynch had just completed his work as foreman, in connection with the erection of a telephone exchange at Afton, in the state of Wyoming. He intended to leave Afton that day by the regular stage running to Montpelier, Idaho, where he was to undertake the work of foreman on a similar job. For some reason, however, he missed the stage and was invited to ride to Cokeville, Wyoming, in a Ford automobile and there catch a

train for Montpelier, the only way out of Afton. The automobile was privately owned and operated by an acquaintance residing at Afton, and he was invited to take the trip as a guest, no payment of compensation being expected. In addition to the owner of the machine and Mr. Lynch, there were two other passengers. When the machine approached Cokeville it skidded for some reason and turned absolutely over. When the car was lifted Mr. Lynch was unconscious. He was taken to the hospital at Montpelier on the first train, and there operated on. It developed that the base of his skull was fractured, and that nothing could be done for him. He died approximately twenty-four hours later, and on the 14th day of September, 1915. The accident which resulted in his death happened in the State of Wyoming.

That the average weekly wage of the said Lynch exceeded $16.00."

The defendant in error, having complied with the statute, in that respect admits its liability, if the reward was properly allowed under the Workmen's Compensation statute.

The judgment of the trial court is based on the conclusion that the facts do not support an award by the commission to the dependents of the deceased workman.

It is contended by defendant in error that the judgment should be sustained for the reasons, (a) that it does not appear that the accident arose out of and in the course of the employment, and (b) that the Workmen's Compensation Act of this state has no extra-territorial effect.

As relates to the first question raised, section 8, chapter 179, Laws 1915, provides:

"The right to the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury or death accidentally sustained on and after August 1, 1915, shall obtain in all cases where the following conditions concur:

1. Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment.

2.   Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment.

3.   Where the injury is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted or intentionally inflicted by another."

The agreed statement limits the inquiry to that of whether or not under the law applicable, is this a case, where the injury was proximately caused by accident arising out of and in the course of his employment.   At the time of his employment and at the time of the accident and death Lynch was a resident of the State of Colorado. The employment was to act as foreman for his employer in the construction of telephone exchange buildings for a telephone company, operating and erecting buildings in the several states of Colorado, Wyoming, Idaho, Montana, Utah, Arizona and New Mexico.

To do this he must necessarily proceed from one point to another within these several states, and it must be assumed that he was to so proceed to and from such places as directed by his employer.   He had just completed a duty within his employment at the town of Afton, Wyoming. He was proceeding under direction of his employer to the town of Montpelier in the state of Idaho, to perform a like duty.   He was proceeding to the railroad station at Cokeville by automobile, the only way provided to reach the railroad station.   There is no indication of any unnecessary loss or waste of time.   Was he then acting in the course of his employment at the time of the accident.

Workmen's Compensation laws are comparatively new in the United States, and it is but natural that in this early period of judicial interpretation there should be divergent views as between the courts of the several states in some respects.   The difficulty in this particular, seems to have arisen because of an apparent failure in some cases to clearly recognize the distinction in principles to be applied. in such cases, and those applicable in negligence cases.

Under the principle of compensation awarded and commanded by the state, the question of negligence is in no sense involved. The validity of these statutes in so far has been determined by our courts, rests upon the basis of a proper exercise of the police power, as being in the interest of the public welfare. The purpose primarily is to relieve the public of the burden of supporting injured workmen, and their dependents, who may by reason of such injuries become objects of charity. The expense is to be treated as an additional cost of the operation of business, and under our statute is collected by the state from the employer in the nature of premiums, based upon the number of employes, wages paid, the character of employment and other consideration calculated to establish a reasonable charge for accident insurance.

This fund is designated as an insurance fund, from which the commission is required to make allowances to the workman and his dependents according to nature and character of the injury as provided and detailed in the statute.

It is quite apparent that it was not the purpose of the law to hold the right of compensation to such strict construction of the term "scope of employment," as in cases of tort where the employer may be held to compensation for his own negligence. In fact the term "in the course of employment," used in the statute, may well be said to differ in meaning from the term "scope of employment" as used in judicial determination in negligence cases.

In truth the payment of compensation does not fall upon the employer at all, but is to be charged to the expense of operation of the business, and is therefore made a part of the cost of the product, as much so as the cost of labor, materials and other actual expenses of operation, so that this expense of insurance becomes ultimately, and in fact a part of the price to the purchaser of the product and to that extent is paid by the public.

Our courts are in agreement that these acts should be broadly and liberally construed, to the end that their beneficient intent and purpose may be reasonably accomplished.

Upon this point it was said in *Zappala v. Industrial Ins. Com.*, 82 Wash. 314, 144 Pac. 54, L. R. A. 1916 A 295:

"In construing the language of the act, we must have in mind the evident purpose and intent of the act to provide compensation for workmen injured in hazardous undertakings reaching 'every injury sustained by a workman engaged in any such industry; and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received.' *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, and that the act should be liberally interpreted, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted even to the inclusion of cases within the reason although outside the letter of the statute, and that every hazardous industry within the purview of the act should bear the burden arising out of injuries to its employees regardless of the cause of the injury. *Peet v. Mills*, 76 Wash. 437, 136 Pac. 685," [L. R. A. 1916 A 358, Ann. Cas. 1915 D, 154].

Construing a statute similar to our own, it was said in *Young v. Duncan*, 218 Mass. 346, 106 N. E. 1:

"The purpose of this act has been stated several times. Briefly, it was to substitute a method of accident insurance in place of the common law rights and liabilities for substantially all employees except domestic servants, farm laborers and masters of and seaman on vessels engaged in interstate or foreign commerce, and those whose employment is casual or not in the usual course of trade, business or employment of the employer, and probably those subject to the federal employers' liability act. It was a humanitarian measure enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employers' liability act had failed to accomplish that measure of protection against injuries and of relief in case of accident which is was believed should be afforded to the workman. It was not made compulsory in its application, but inducements were held

out to facilitate its voluntary acceptance by both employers and employes. It is manifest from the tenor of the whole act that its general adoption and use throughout the Commonwealth by all who may embrace its privileges is the legislative desire and aim in enacting it. The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design."

The English Workmen's Compensation acts were adopted some years prior to that of any American statute on that subject, and the question now under consideration has been frequently construed by the English courts. The subject is reviewed at length by Mr. Chartres in his work on Judicial Interpretations of the Law Relating to Workmen's Compensation, 1915, beginning at page 137.

It seems to be generally held by the English courts that employment is not necessarily synchronous with contract of service, but that in all those things that he is entitled to do by virtue of his contract, he is for the purposes of the Act employed to do, and they are therefore within his contract of employment. The author quotes among many other authorities, the language of Farwell L. J., in *Gane v. Norton Hill Colliery Co.*, (1909) 2 K. B. 544, which seems to be a fair statement of the English law:

"It is well settled that the employment is not confined to the actual working whether in a pit or at any other trade, in which the workman may be engaged. He is employed not only to work in the pit, but also to do other things that he is entitled to do by virtue of his contract or employment; for example, he is entitled to do, and therefore employed to do, such acts as coming on the employers' premises, passing and repassing for all legitimate purposes connected with his work on the premises, such as getting to the pit's mouth, going to get his wages, going to make proper inquiries from proper officers, or taking a train which he is entitled to use by virtue of his contract of service as in the cases of *Cremins v. Guest, Keen & Nettlefolds* (p. 151, post) and *Holmes v. G. N. Railway Co. (ibid.)*, All

those things that he is entitled to do by virtue of his contract he is for the purposes of the act employed to do, and they are therefore within his contract of employment. I would qualify this by saying that he must make reasonable use of the facilities and rights which are given to him in this way."

In the case at bar it was an essential part of his employment that the deceased should travel from the place where he had installed one plant to the place where he was to install another. It is also clear that he adopted a reasonable, and apparently the only facility for such travel under the circumstances, and as safe as any other that may have been available.

No case is cited that adopts a different rule, and we know of none, as applied to workmen's compensation statutes.

It is urged that the case of *Industrial Commission v. Anderson*, by this court, 169 Pac. 135, supports the contention of defendant in error. We do not think so. In that case Anderson was permitted to do his work either at his home or at his employers place of business. This was a matter of choice with him, and not either a direction or a requirement of his employment. He was going from one of these places to the other. The case was decided upon this principle. In this case the contract of employment impliedly, at least, required the deceased to proceed from the one place of employment to another. He was traveling on his employer's business, which by his contract he was bound to do, and for which it is reasonably assumed he was being paid to do, for it is not to be presumed that he was under the circumstances, traveling such distances upon his own time. It may be safely said that he was doing that which was incidental to the character of the business, and not independent of the relation of master and servant, but rather had its origin in a risk connected with the employment.

This distinction is well supported by authority. In the case of *Terlecki v. Strauss*, 85 N. J. Law 454, 89 Atl. 1023, where a factory employe quit work at her machine shortly

before noon, and was in accordance with custom combing particles of wool out of her hair preparatory to going home, and at a point thirty-two feet from her machine, when her hair was caught in other machinery and she was seriously injured, it was held that the accident arose out of and in the course of her employment.

In *Kunze v. Detroit Shade Tree Co.,* 192 Mich. 435, 158 N. W. 851, L. R. A. 1917 A, 252, involving an award by the Industrial Accident Board, under a state of facts as follows:

"Having been with the defendant company for about two years, on July 18, 1914, he was employed as a foreman, and in the course of this employment it was his duty to go from job to job about the city. On the day aforementioned, he had inspected a job on Virginia Park, a street in the city of Detroit, and, having completed this inspection at about 9 o'clock in the morning, he left the work in charge of another employe and started east on Virginia Park to the intersection of Woodward avenue, where it is to be reasonably inferred from the evidence he was about to take a car to inspect another job north of Virginia Park at the corner of Josephine avenue and Woodward avenue; and it also appears that there was another job for inspection at the corner of Mt. Vernon and John R. Streets, which was also north of Virginia Park. While at the intersection of Virginia Park and Woodward avenue, he was knocked down by an automobile, seriously injured, and died the following day."

It was held that the accident arose out of and in the course of the employment.

In the very interesting case of *Foley v. Home Rubber Co.,* 89 N. J. Law 474, 99 Atl. 624, the employe lost his life in the sinking of the Lusitania, while engaged as a traveling salesman and enroute to visit his employer's London office, and it was held that the accident arose out of and in the course of his employment. The court said:

"If the Lusitania had been lost through a collision, fire, or storm at sea, resulting in the death of Foley, it would,

under the principle enunciated in all the cases bearing on this subject, be held to have been an accident arising out of his employment. Foley's presence on the ship was connected with the very employment in which he was engaged. The fact that the Lusitania was lost through none of the common perils of the sea, but by an extraordinary peril, does not make the extraordinary peril less a cause of accident arising out of Foley's employment. Both Foley and his employer were chargeable with knowledge of the perils of war upon the high seas. They must be assumed to have known that a belligerent vessel sailing under a belligerent flag carrying contrabrand of war subjected the vessel to attack by an enemy vessel, and that as a result of such attack, under many contingencies recognized by the law of nations, not only the loss of the vessel attacked, but the loss of lives of those upon her, might result."

In the very recent English case of *White v. W. & T. Avery, Limited,* Vol 53, Scottish Law Reporter, 122, and under the following facts:

"A machine-fitter, whose duty it was to go around to various places where the employers had erected or executed repairs upon weighing-machines, was engaged in inspecting railway weighing-machines. To one of the machines he proceeded to walk upon a road rendered slippery by frost after rain. While endeavoring to avoid a vehicle he slipped and fell, breaking his wrist."

It was held, following an unbroken line of English decisions, that the injury was caused by accident arising out of, as well as in the course of, the employment. This was under the workmen's compensation law.

The case of *Summers v. California Iron Works and London & Lancashire Indemnity Co;* First Appellate District of California, reported in 5 Decisions Industrial Accident Commission, 386, is almost parallel to the one at bar. It was there held that an injury sustained by a millwright while journeying in an automobile belonging to his son, to a place where he had been directed to go by his employer to install machinery, is an injury arising out of his em-

ployment within the workmen's compensation act, where it is shown that his employment was in the nature of a traveling employment, requiring him to go to any particular place where a contract for the installation of machinery had been obtained.

It was there said:

"On behalf of the respondent herein it is conceded that the general rule governing ordinary cases arising under the Workmen's Compensation Act is that for which the petitioner herein contends; but the respondent herein argues, we think convincingly, that the facts of this case bring it within the exceptions to the general rule. The exceptional cases are those wherein the employment itself is one in which the employee is required to travel from place to place at the will of the employer, and hence where the risks of such travel are directly incident to the employment itself and hence wherein the accident occurring by reason of such risk is one arising out of the employment, and therefore a proper subject of compensation under the Employers' Liability Act." Citing *Cameron v. Pillsbury,* 173 Cal. 83, 159 Pac. 149; *Milwaukee v. Althoff,* 156 Wis. 68, 145 N. W. 238, L. R. A. 1916 A, 327.

We now come to the question as to whether or not the Colorado workmen's compensation act has what is termed extra-territorial effect. It is contended that there can be no recovery for the reason that the accident occurred in the state of Wyoming, notwithstanding the contract was made in Colorado; that both parties to it at all times resided in Colorado; and that the services under it were to be performed partially at least in this state.

Counsel concede that it is within the legislative power to give extra-territorial effect by express provision, but contend that in the absence of such expressed purpose it must be conclusively presumed that general words were intended to be limited in their application to the territorial jurisdiction of the legislature using them.

The *William S. Gould* case, 215 Mass. 480, 102 N. E. 693, Ann. Cas. 194-D 372, is cited to support this conten-

tion.  This case construed the statute of Massachusetts, which in respect to the question at issue, is like the Colorado law, in that the statute is voluntary, and that it does not in express terms provide for compensation in case of accidents occuring without the state.  It was there held that the statute does not apply.

This decision was perhaps the first involving the question by an Appellate Court in this country, and the doctrine there announced has not generally been followed, but on the contrary has been very generally disapproved by courts of last report.

The Gould case was followed and approved by Mr. Bradbury in the first edition of his work on Workmen's Compensation and State Insurance, but in the second edition of this work the author recedes from this position, and announces his belief that the doctrine which must be finally established will be in effect that the law of the place where a contract of employment is made, will govern the rights and liabilities of employes and employers, to claim and to pay compensation.

It will be noted that in the Gould case the court relied largely on the English cases, which was in fact the only authority it had, but the author quite clearly points out the inapplicability of these authorities as follows:

"In Great Britain the conditions are entirely different from those existing in the American States, although the decisions hereinbefore cited arose in relation to accidents which happened entirely outside the United Kingdom.  True, the accidents in one of the cases, at least, happened on a British vessel.  Under the decisions in the cases of *McDonald v. Mallory,* 77 N. Y. 546, 33 Am. Rep. 664, and *Crapo v. Kelly,* 16 Wall. 610, 21 L. Ed. 430, it might be that even the Massachusetts Act would be held to apply in similar circumstances.  In this respect the British decisions are in conflict with adjudications of our Federal Supreme Court.  But the principal difference in the conditions between Great Britain and the United States is that in the former the Compensation Act applies to the whole of the

territory of the United Kingdom. Thus, if an employer in London sends an employe to Scotland, Wales or Ireland and he is there injured, the Compensation Act applies. While under the doctrine of *Gould v. Sturtevant,* supra, if a Massachusetts employer should send a workman to New York, the Massachusetts Act would have no application whatsoever and the employe would have no claim whatsoever on his employer, unless he could base it on negligence. This, of course, would be assuming there was no compensation law in New York.

Therefore, partially receding from the position taken in the first edition of this work, although that position has been sustained by eminent authority, it is believed that the doctrine which must be established finally will be, in effect, that the law of the place where a contract of employment is made will govern the rights and liabilities of employes and employers to claim and to pay compensation." Bradbury's Workman's Compensation and State Insurance, Vol. 1, 2nd Ed. 55.

The later authorities in this country base the conclusion chiefly on the proposition that under voluntary compensation statutes such as ours, the cause of action of petitioner is *ex contractu,* and that the *lex loci contractus* govern the construction of the contract and determines the legal obligations arising under it.

The provisions of the compensation act are to be construed as written into the contract and therefore a part of it. The reasonings of these cases is well stated in *Deeny v. Wright & Cobb Lighterage Co.,* 36 N. J. Law J. 121, to be:

"It appears that there is an implied contract to compensate for injuries arising out of and in the course of the employment, and under it all other methods and rights to any other form of compensation are relinquished. The statute can have no extra-territorial effect, but it can require a contract to be made by two parties to a hiring that the contract shall have an extra-territorial effect. The contract is binding on the employe, himself and upon the

employer, and it is conclusively presumed that the parties have accepted the provisions of Section II and have agreed to be bound thereby. The method of termination of the contract is provided for in paragraph 10. It would seem that the reasonable construction of the statute is that it writes into the contract of employment certain additional terms. The cause of action of petitioner is *ex contractu.* The *lex loci contractus* governs the construction of the contract and determines the legal obligations arising from it. 9 Cyc. 664. That the cause of action is *ex contractu,* see *Sexton v. The Newark District Telegraph Company,* 34 N. J. Law Journal 368, and 35 N. J. Law Journal 8; *Icelsborg v. Miller,* 35 N. J. Law Journal 202.

The English cases cited in Bradbury's book are not precedents, because a claim under the English act is *ex delicto.*

The objects of our act are to protect the citizens and inhabitants of New Jersey. It is based upon the proposition that the inherent risks of an employment should, in justice, be placed upon the shoulders of the employer, who can protect himself by an addition to the price of his product, and so cause the burden ultimately to fall upon the consumer; that indemnity to an injured employe should be as much a charge upon the business as the cost of replacing or repairing disabled or defective machinery, appliances or tools; that under our former system the loss fell immediately upon the employe, who is almost invariably unable to bear it, and, therefore, ultimately upon the community, which is taxed for the support of the indigent, and that our former system was uncertain, unscientific and wasteful and fostered a spirit of antagonism between employer and employe, which it is to the interest of the state to remove.

The contract here was to be partly performed in New York and partly in New Jersey. The law of New York, the admiralty law or the Act of New Jersey applies. The parties chose the law of New Jersey by making the contract here without giving the notice required by the act

to come under Section 1. Shall the public policy of New Jersey to place the burden on the industry be carried into effect, or shall the sole loss fall on the petitioner in violation of the law of his state? It would be contrary to public policy to place the burden on the employe under the facts in the case."

The principle is concisely and curtly stated in *Rounsaville v. Central R. R. Co.*, 87 N. J. Law 371, 94 Atl. 392, in the following language:

"We are now dealing with the simpler question, whether a New Jersey court will enforce a New Jersey contract according to the terms of a New Jersey statute. The question hardly calls for an answer. The place where the accident occurs is of no more relevance than is the place of accident to the assured in an action on a contract of accident insurance, or the place of death of the assured in an action on a contract of life insurance."

In the case of *Grinnell v. Wilkinson*, 39 R. I. 447, 98 Atl. 103, L. R. A. 1917 B. 767, the court entered upon a most elaborate review of the authorities and fully answers many contentions in the brief of counsel in this case, concerning particular expressions in our act quite similar to those found in the Rhode Island act, which it was there urged as in this case, lends support to the construction contended for. The court concluded as follows:

"The latest case which has come to our attention is *Post v. Burger & Gohlke et al.*, 216 N. Y. 544, 111 N. E. 351 (January, 1916), a New York case, where the same question arose under the Workmen's Compensation Act of New York. The case follows substantially the same line of argument and arrives at the same conclusion as the cases of *Kennerson v. Thames Towboat Co.*, supra, and *Rounsaville v. Central R. Co.*, supra, 89 Conn. 367, 94 Atl. 372, L. R. A. 1916 A. 436, both of which it cites with approval. See also *Deeny v. Wright & Cobb, etc., Co.*, 36 N. J. Law J. 121; 1 Bradbury Workmen's Compensation, pp. 50, 52 *et seq.*, cited with approval in the *Kennerson Case*, supra, L. R. A. 1916 A, 436, and in the *Post Case*, supra, 216 N.

Y. 544, 111 N. E. 354, Ann. Cas. 1916 B. 158.

We are of the opinion that the reasoning of the cases above cited from New York, New Jersey and Connecticut is quite applicable to the case at bar; that under the Workmen's Compensation Act of Rhode Island the relation of employer and employe is contractual and the terms of the act are to be read as a part of every contract of service between those subject to its terms; that on principle and in reason, and in view of the purpose, scope and character of the act, it should be construed and held to include injuries arising out of the state, as well as those arising within it; and that the weight of authority upon acts similar to our own gives full support to our conclusion."

The New York statute in the respect we are considering is not materially different from that of Colorado, and it was held in the case of *Matter of Post v. Burger & Gohlke,* 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916 B. 158, after an extensive review of the authorities, that:

"The act, taken as a whole, in view of its humane purpose, should be construed to intend that in every case of employment there is a constructive contract between the employer and employe, general in its terms and unlimited as to territory, that the employer shall pay, as provided by the act, for a disability or the death of the employe as therein stated. The duty under the statute defines the terms of the contract.

Where, therefore, a resident of this state, employed by a corporation engaged in business in this state, is sent by his employer to perform work in another state, away from the plant of the employer, but under the employer's express direction, and while engaged therein is injured, he is entitled to compensation when in other respects he comes within the provisions of the law."

The difficulties and injustice that may arise in case the law shall be held to apply to accidents occurring within the state only are forcibly stated in the well reasoned case of *Kennerson v. Thames Towboat Co.,* 89 Conn. 367, 94 Atl. 372, L. R. A. 1916 A. 1436, where it was said:

"The remedy provided by our Compensation Act is sub-stitutionary in character, furnishing what was purposed to be a more humanitarian and economical system as a substitute for one deemed wasteful to industrial enterprises and commerce, and unfair to employees. Its intent was to afford its protection to all Connecticut employers and employees who might voluntarily choose to make its provision for compensation for injury a part of their contracts of employment. It assumed that accident is incident to employment, and purposed to charge its cost, in the case of every injury not caused by the wilful and serious misconduct or intoxication of the injured employee, to the industry in which it occurred. It intended that the employee should know what compensation he or his dependents would receive in the event of injury, and that payment should be made speedily by a procedure at once simple and inexpensive. It intended that the employer, too, should know his liability in this regard, and so might include it among the items charged to operation. If our act intends its contracts of employment to include compensation for injuries occurring only within our jurisdiction, it manifestly defeats its own ends. In that case the employer may not charge to the industry the compensation for injuries occurring without the state, and the employee or his dependents may not collect the same.

Neither employer nor employee can know what portion of this period of employment will be subject to the provisions of the act, and no provision for insurance of this liability will be practically possible, since it may not ordinarily be known what part of the service will be in, and what part out of the state, or in what jurisdiction the service will be performed, in industries and commercial enterprises engaged in intrastate and interstate employment. The state boundary is not the limit of very many businesses. To subject them to the laws of the many

jurisdictions in which they may be engaged will be especially burdensome to them, and involve them probably in greater difficulties than under the old system.

Equally hard will it prove to the employee, since he must pursue his remedy in the state of the accident, or the Federal court, applying that state's law, and thus he may be brought under any one of many different compensation acts, with whose provisions he can not hope to be familiar; some acts contractual in character, some compulsory, some optional, and some *ex delicto;* and he may find he has forfeited the benefit of the foreign act through failure to comply with its provisions. A reading of the several acts now in force convinces us that these difficulties are not imaginative, but imminent actualities.

Is it reasonable to infer that our legislature, inaugurating a new system based upon humanitarian and economical considerations, should intentionally frustrate the object of the new system, and cast a multitude of employers and employees into a maelstrom of trouble, uncertainty and liability? On the other hand, is it not reasonable to infer that the legislature, having bottomed the right to compensation upon contract, deemed unimportant the place of injury, since it must be presumed to have known that the contract, and not the place of injury, would govern the recovery. Such a construction of the act would lift insuperable burdens from industry and commerce and workmen, and give to each his course and the ascertained fruits of the contract of his will."

Continuing, the court said:

"Where, as with us, the determination of the award is committed to a board or commission under a specified procedure, there will be serious obstacles to the enforcement of the contract in a foreign jurisdiction. 1 Bradbury's Workmen's Compensation, (2d Ed.) p. 52. If it should be necessary to so rule, no hardship would result; the parties in interest would be relegated to the place where they had elected to make their contract and no questions

of conflict of laws could arise. At the base of this question is the character of the compensation. Mr. Bradbury, repudiating his earlier view, stoutly maintains that, if the act be contractual, the contracts arising will, unless a contrary intent appears, be found to cover injuries without as well as within the state. We think his later conclusion sound, and one which will prove beneficial alike to employer and employee."

Counsel, however, urge that Section 5 of the Act of 1915, by the use of the words, "for a personal injury sustained within this state," supports the contention that compensation may be allowed for accidents occurring within the state only. The section deals only with negligence cases, not with compensation, and denies the defenses in such cases of assumed risk, the fellow servant rule, and contributory negligence.

The very purpose of the provision is to induce employers to accept the compensation law, in so denying such defenses in negligence cases. Beside, the act should be construed as a whole in the light of its purposes. It was held in the case of *Gooding v. Ott,* 77 W. Va. 487, 87 S. E. 862, L. R. A. 1916 D. 637, where the compensation statute was seemingly limited to persons, "as shall have received injuries in this state," that it was a construction too narrow to hold that these words limited the right of compensation to injuries occurring within the state, in view of the objects and purposes of the act.

In the case at bar, if we are to determine, in the absence of any provision of the statute to the contrary, that the doctrine of *lex loci contractus* does not govern, it will be to destroy the very spirit and purpose of the law as it affects the employer, the employee and the public welfare.

If we assume that there are no workmen's compensation laws in the states where the deceased was to perform his services outside of Colorado, then there can be no recovery of compensation, notwithstanding all premiums sufficient to maintain the workers' accident insurance had been fully paid. On the other hand, if we are to assume that a

workmen's compensation law prevails in each of the seven states of Colorado, Wyoming, Idaho, Montana, Utah, Arizona and New Mexico, then the employer must be compelled to comply with each statute and to pay the premiums required by the law of each state for the protection of the one employee, or approximately seven times the amount otherwise required.

If this were legally permissible, the expense would make it prohibitive. The result in this case must be that the employer has paid the full premium demanded by the state to insure his employee against accident; the employee has relied on the pledge of his state for the protection of himself and his dependents; his widow and children discover the whole arrangement to be a delusion and a snare, and find themselves without protection. Thus, the employer, the employee, his dependents and the public have all been deceived and cheated, because forsooth the accident occurred beyond the imaginary line that marks the boundary of the commonwealth, though it happened within the line of employment.

We can not assume that the legislature ever intended such an injustice and absurdity, in the absence of some clear and express provision in the statute to that effect, which we do not find.

The judgment is reversed with instruction to enter judgment confirming the award of the Industrial Commission theretofore allowed.

Judgment reversed.

*En banc.*

White, J., and Bailey, J., dissenting.