No. 16,506.

CONTINENTAL OIL COMPANY ET AL. *v.* SIRHALL ET AL.
(222 P. [2d] 612)

Decided August 28, 1950.   Rehearing denied September 25, 1950.

Messrs. McCOMB, NORDMARK & ZARLENGO, for plaintiffs in error.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. DONALD C. MCKINLAY, Assistant, for defendant in error Industrial Commission.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

CONTINENTAL OIL COMPANY is the owner of a filling station which, with equipment, it leased to Miller for a period of one year at an agreed monthly rental. Claimant, who was employed by Miller, was injured while performing services within the scope of his employment at the filling station and was awarded compensation against the lessor company. This award was affirmed by the district court.

Independent of the statute, claimant beyond question was an employee of Miller, and not of the company. Miller selected him, determined and paid his wages, determined and assigned his work, directed its performance and had the right to discharge him. The question before us is whether the company nevertheless is liable under the provisions of section 49 of the Workmen's Compensation Act (section 328, chapter 97, '35 C.S.A.), the pertinent part of which reads: "Any person, company or corporation operating or engaged in or conducting any business by leasing, or contracting out any part or all of the work thereof to any lessee, sub-lessee, contractor or sub-contractor, shall irrespective of the number of employees engaged in such work, be construed to be and be an employer as defined in this article, and shall be liable as provided in this article to pay compensation for injury or death resulting therefrom to said lessees, sub-lessees, contractors and sub-contractors and their employees, * * *."

We have repeatedly held that this section is valid and that thereby an obligation may, in proper case, be imposed against an owner where the common-law

relationship of employer and employee does not exist, in that one may be an employee by virtue of the statute, for the purpose of workmen's compensation, when. in fact he is not an employee by common-law definition. *Industrial Commission v. Continental Inv. Co.,* 78 Colo. 399, 242 Pac. 49; *Rhodes v. Industrial Commission,* 99 Colo. 271, 61 P. (2d) 1035. We have declared that this act is for a beneficent purpose and should be broadly and liberally construed. *Industrial Commission v. Aetna Co.,* 64 Colo. 480, 174 Pac. 589; 3 A.L.R. 1336.

The fact that Continental Oil Company was the lessor of claimant's employer would not of itself create liability on its part. As we said in *Index Mines Corp. v. Industrial Com.,* 82 Colo. 272, 259 Pac. 1036: "Not every lessor by virtue of said section 4423 [section 328, chapter 97, '35 C.S.A.] is liable for compensation to the employees of his lessees. To make the lessor so liable there must be facts showing that he is operating, engaged in, or conducting his business by leasing; not merely that he is a lessor." Miller was ostensibly merely a lessee of the company. In form the relationship was, as alleged, a pure lessor-lessee relationship. There was a specified monthly rental based on the business done at that station during the preceding year, with no share of loss or profit by lessor. There was no right of control of the business or operation reserved by the lessor. Lessee's only formal obligation was to pay the specified rental and keep the property operating and in good condition. He purchased his products from the company for cash. It is urged that the situation is exactly that of any owner of real estate who leases it to another.

However, we cannot fail to note that this is not the type of property which would normally be rented for one year at a time, like farm property. It requires much longer than a year to establish trade and build up a successful business, and when established such trade cannot readily be taken to a new location. Power to

terminate a lease may be just as effective as written authority in controlling the use of property. We further note from the record that the Continental Oil Company, for all its many stations, does not operate any of them directly, whether in Denver or elsewhere; that its many stations all "look pretty much alike"; that they all have the common Conoco sign; that while the lease does not prohibit the tenant from removing the sign or from selling other gasoline during the duration of the lease, yet if he did so, admittedly the company would try to find a lessee who would maintain its sign; that the company wants its own product sold out of its stations, and that its representative, who had charge of leasing the company's Denver service stations, had never known of its products not being sold at its stations.

We have, then, a situation where a company, engaged in the refining and sale of gasoline and oils, owns many parcels of real property; that they are equipped with buildings, pumps and other facilities adapted only for sale of such products as it manufactures and distributes; that these properties are all of similar appearance and all bear conspicuously the company's peculiar trade name and sign; that they are leased for terms of one year only; that while the tenants are theoretically free to sell the products of competing companies, in fact none has ever done so; but all are engaged in, and the leased property devoted to, the sale of the company's products; and that any other sales made or services performed at these properties are merely incidental to the sale of the company's products.

■ Under such situation the Industrial Commission has made award predicated on finding that the company was operating its business by leasing part of the work of its business to a lessee. The evidence amply supports such finding, and if, as urged, the evidence was without substantial conflict, and the court was required to determine the application of the statute to the situation

presented, the affirmance of the award by the trial court has ample support.

Great stress is laid on the case of *Bukowich v. Ford Motor Co.*, 99 Colo. 56, 59 P. (2d) 470, which counsel says "has facts that are almost identical with those in the case at bar," and which the attorney general says is "by far the closest case on its facts to the one now before the court." We are unable to discover any such affinity. In that case no question of operating a business by leasing was involved. There, Ford Motor Company did not own either the building or the equipment. Both were held by the local dealer either by virtue of ownership or of lease from some other person without power of termination by the company; there the sale of the Ford Motor Company products is not shown to have been the dominant part of the dealer's business. He not only sold that company's products, but also operated, as part of the same business, a filling station; handled Conoco gasoline and oil; did a general garage and car-storage business; handled Gates tires, and operated an automobile accessory business, besides handling parts for other cars, not obtained from the Ford Motor Company. These numerous lines of business were together operated under the dealer's own trade name. Neither the Ford Motor Company nor the Continental Oil Company nor the Gates Rubber Company is shown to have had any concern with his business except as to the handling of its own merchandise. It was not in fact even indirectly operated or conducted by any one of those companies, but by the dealer himself, and when considered as a unit there was no evidence that it was a part of the operations or business of the Ford Motor Company. Had that company owned and leased to the dealer a building equipped and adapted principally to the display, sale and service of Ford Motor Company products, by short term lease, and had the dealer's business been restricted almost exclusively to the sale of such products, then the situation might have been anal-

agous to that here presented. But such was not the case. The question is largely one of degree and fact.

Much more in point and closer as to its facts, we think, is the case of *Rhodes v. Industrial Commission, supra,* where the owner of property leased separate parcels for the purpose of placer mining through its representatives who allotted the lands to be mined, and detailed the equipment to be used, with authority to cancel the contract unless the work was prosecuted diligently and as directed. Under such situation the owner of the property was held to be an employer as defined in the Workmen's Compensation Act. We find similarity in *Index Mines Corp. v. Industrial Com., supra,* where property was held under bond and lease for the purpose of mining, and an injured employee of the lessee was awarded compensation against the owner. There we said, in passing on the petition for rehearing: "But the statute has no force if it applies only to the case of actual employer and employee. Its force lies in the fact that it says that one shall 'be construed to be' an employer who would not otherwise be such."

True, in those cases the leasing was on a royalty basis, while here it was based on the business volume of the preceding year, but that is not the test; rather it is that the lessor is conducting part of his business by leasing out. As we said in *Rhodes v. Industrial Commission, supra:* "The act is not limited to specific technical relationships. It covers every business conducted by one through the activities of another under any kind of contract."

We find no other workmen's compensation statute with similar provision as to liability by virtue of leasing out, but even in the absence of such a provision, we note that in *Bieluczyk v. Crown Petroleum Corp.,* 134 Conn. 461, 58 A. (2d) 380, an oil company leasing out a filling station was held subject to a workman's compensation claim in a somewhat similar situation, although

338

the claimant was a mechanic employed as such and not as a station attendant.

The judgment is affirmed.

MR. JUSTICE ALTER and MR. JUSTICE HOLLAND dissent.